IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RUFAYDA ABDALLA OMAR, et al.  :

   Plaintiffs,    :   Case No. 3:24-cv-60

  v.         :   JUDGE WALTER H. RICE

ANTHONY J. BLINKEN,
Secretary of State, et al.,  :

   Defendants.

---

DECISION AND ENTRY OVERRULING MOTION TO DISMISS FILED BY
DEFENDANTS ANTHONY J. BLINKEN, ET AL (DOC. #11)

---

Plaintiffs Rufayda Abdalla Omar ("Omar") and Seif Khamis Seif ("Seif") (collectively "Plaintiffs") are a married couple who filed this lawsuit against Anthony J. Blinken, Secretary of the U.S. Department of State, and Carson Wu, Acting Director of the Office of Screening, Analysis, and Coordination (collectively "Defendants"). Doc. #1. Plaintiffs contend that Defendants, in their management of the government agencies responsible for issuing visas, have unreasonably delayed in adjudicating the visa application for Seif to enter the United States. Plaintiffs seek relief under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq. *Id.*, PageID #21–31. Pending before the Court is a Motion to Dismiss Plaintiffs' Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and

Fed. R. Civ. P. 12(b)(6), for lack of jurisdiction and failure to state a claim upon which relief can be granted, filed by Defendants before they submitted an Answer. Doc. #11. Plaintiffs have filed a Response in Opposition to the Motion to Dismiss, Doc. #13, and Defendants have filed a Reply. Doc. #16.

For the reasons set forth below, Defendants' Motion to Dismiss, Doc. #11, is OVERRULED.

## I.  Procedural and Factual Background

The following factual allegations are taken as true as alleged in the Complaint. Omar is a United States citizen, and her husband, Seif, is a Tanzanian national and applicant for an immigrant visa. Doc. #1, PageID #17. Omar filed a Form I-130 Petition for Alien Relative ("I-130") with the United States Citizenship and Immigration Services ("USCIS") on behalf of Seif which was approved on July 12, 2022. *Id*. Once the I-130 was approved, Seif was able to file a Form DS-260 Online Immigrant Visa and Alien Registration Application ("DS-260"), which he did on July 18, 2022. *Id*.

By way of background, after USCIS preliminarily approves a visa petition, it transfers the case to the National Visa Center ("NVC"), which is run by the U.S. Department of State.[1] *See Step 2: Begin National Visa Center (NVC) Processing*,

---

[1] The Court may consider matters of public record in ruling on Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) motions where the information contained therein is undisputed and from a reliable

2

U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html (last visited Nov. 15, 2024). Once the noncitizen submits the required documentation and pays the required fees, the NVC must schedule a visa interview appointment for the noncitizen with a consulate in the country in which the noncitizen is located. *See Step 10: Prepare for the Interview*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-10-prepare-for-the-interview.html (last visited Nov. 15, 2024).

On February 15, 2023, Plaintiffs were notified that they were documentarily qualified. Doc. #1, PageID #17. On May 11, 2023, Seif was interviewed by the Consular Section of the U.S. Consular Section of the U.S. Embassy in Dar Es Salaam, Tanzania. *Id.* Following the interview, Plaintiffs' application was placed into "administrative processing," a posture where it remains to this day.[2] *Id.* at PageID #18.

---

source, such as an agency's website. *See, e.g.*, *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) (taking judicial notice of the information listed on the Bureau of Prison's website); *Doss v. Corizon, Inc.*, 636 F. Supp. 3d 807, 810 n.1 (W.D. Mich. 2022); *Pharm Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33–34 (D.D.C. 2014). Moreover, the Court "may consider evidence outside the pleadings" when considering the merits of Defendants' Fed. R. Civ. P. 12(b)(1) challenge. *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) (citing *Rogers v. Stratton Indus.*, 798 F.2d 913, 916 (6th Cir. 1986)); *see also Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012).

[2] Because there are only two statutorily recognized outcomes following a visa application—approval or refusal—some visa applications which require further documentation to finalize are placed into administrative processing. If a visa is placed into administrative processing, the reviewing consular official will request additional information from the applicant to help make a final determination of

Plaintiffs filed their complaint on February 28, 2024. Doc. #1. They raise four principal claims: (1) Count I, a request for mandamus, requiring Defendants to adjudicate the Form DS-260; (2) Count II, a claim under the APA, 5 U.S.C. § 706(2), alleging that Defendants have unreasonably delayed action on the Form DS-260; (3) Count III, a claim under the APA, 5 U.S.C. § 706(1), alleging that Defendants have unreasonably delayed mandatory action; and (4) Count IV, a claim under the APA, 5 U.S.C. § 555(b), alleging that Defendants unreasonably delayed adjudication.[3] *Id.*, PageID #21–31. In their mandamus claim, Plaintiffs cite *Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997), a case in which the Ninth Circuit noted that federal courts possess jurisdiction to consider a claim of unreasonable delay where a consular official refused to adjudicate the appellants' visa applications. *Id.*, PageID #22. They allege that the delay of at least two years in adjudicating Seif's DS-260 has injured their marital and familial relationship and caused financial and emotional hardship without sufficient justification. *Id.*, PageID #19–21.

## II.   Legal Standard

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

---

their visa eligibility. *See Administrative Processing Information*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited Nov. 15, 2024)

[3] Plaintiffs also seek attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504; 28 U.S.C. § 2412. Doc. #1, PageID#32.

The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the [opposing party] has failed to adequately state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007), citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991). The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on the motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Treesh*, 487 F.3d at 476.

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does

5

require more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief." *Id.* at 679.

A challenge to the subject matter jurisdiction of the United States District Court under Rule 12(b)(1) of the Federal Rules of Civil Procedure may either be facial or factual. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). A facial challenge requires all the plaintiff's allegation to be accepted as true, "much as with a Rule 12(b)(6) motion." *Id.* In contrast, a factual challenge to the court's subject matter jurisdiction allows the court to "weigh evidence to confirm the existence of the factual predicates for subject matter jurisdiction," without presuming the truth of the allegations. *Id.* (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996)). "Making this 'crucial distinction, often overlooked,' is essential to determining the proper standard of review to apply." *Lockhart v. Garzella*, No. 3:19-cv-405, 2022 WL 1046766, at *5 (S.D. Ohio Apr. 7, 2022) (Rice, J.) (quoting RMI Titanium, 78 F.3d at 1134).

6

Here, Defendants' challenges to this Court's subject matter jurisdiction are purely legal. As such, the Court will assume all of Plaintiff's factual allegations to be true, as with the standard of review for a motion made under Rule 12(b)(6).

## III. Analysis

Defendants raise two principal arguments. First, they contend that Plaintiffs fail to state a claim because a consular office has already refused Seif's visa application and consular non-reviewability precludes subject matter jurisdiction over Plaintiff's claims. Doc. #11, PageID ##108–13. Second, they allege that any delay in the adjudication of Seif's visa application is reasonable and therefore does not warrant mandamus. *Id.* at PageID ##113–21. In doing so, they rely on the factors set forth in *Telecommunications Rsch. and Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC* factors"). *Id.*

### A. Judicial Review and Jurisdiction

Before addressing Defendants' specific pleading-based and jurisdictional arguments, the Court must be satisfied that it can perform judicial review and exercise jurisdiction.

First, federal law requires that agencies "within a reasonable time . . . proceed to conclude a matter before it." 5 U.S.C. § 555(b). Section 706(1) of the APA permits a "reviewing court" to "compel agency action . . . unreasonably delayed[.]" 5 U.S.C. § 706(1). "[A] claim under § 706(1) can proceed only where a plaintiff

7

asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted). Plaintiffs advance several theories to support their stance that a "discrete agency action" remains to be undertaken. The Court need not weigh in on the merits of such arguments at this point, however. It is enough at this stage to find that the APA permits judicial review in the limited circumstances described above to provide oversight on some agency actions.

Second, the Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[T]o exercise such jurisdiction, the party seeking the writ must have no other adequate means of relief." *Boakye v. Hansen*, 554 F. Supp. 2d 784, 786 (S.D. Ohio 2008) (Rice, J.) (collecting cases). "When a petitioner seeks both mandamus relief and relief under the APA, courts apply the same principles and standards both to determine jurisdiction and to assess the merits." *Huron Mountain Club v. U.S. Army Corp. of Eng'rs*, 545 F. App'x 390, 393 (6th Cir. 2013) (quoting *Nelson v. United States*, 107 F. App'x 469, 470 (6th Cir. 2004)). Because the Court may review Plaintiffs' claims under the APA, it may therefore review the request for mandamus. *Id.*; *see Yu v. Brown*, 36 F. Supp. 2d 922, 928–30 (D.N.M. 1999).

Third, as to subject matter jurisdiction, Plaintiffs allege federal question jurisdiction under 28 U.S.C. § 1331. Doc. #1, PageID #2. Although the Mandamus Act and APA cannot themselves confer subject matter jurisdiction, the Court has jurisdiction over Plaintiffs' claims through § 1331.[4] *See Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 (6th Cir. 2014).

### 1. *Consular Nonreviewability Doctrine*

On top of the ordinary analysis of jurisdiction that this Court would have to undergo in any suit, claims involving adjudications of visa applications involve special considerations. "[T]he admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)). As a result, "the action of an executive officer to admit or exclude an alien is final and conclusive." *Dep. Of State v. Munoz*, 144 S.Ct. 1812, 1820 (2024) (internal quotations omitted). This principle of consular nonreviewability means that, as a rule, federal courts cannot second guess a consular officer's decision to deny a visa. *Id.* However, it "is not triggered until a consular officer has made a *decision* with respect to a particular visa application."

---

[4] Federal courts can only review "final agency action," but this includes an agency's "failure to act." 5 U.S.C. § 551(13). Thus, USCIS's alleged failure to act on the Form DS-260 is reviewable. *See Barrios Garcia v. U.S. Dep't of Homeland Security*, 25 F.4th 430, 441–42 (6th Cir. 2022).

*Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 139 (D.D.C. 2020) (internal quotation marks omitted) (emphasis in original) (quoting *Jafari v. Pompeo*, 459 F. Supp. 3d 69, 75 (D.D.C. 2020)); *see also Nine Iraqi Allies Under Serious Threat Because of their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016).

There is one narrow exception to this nonreviewability doctrine where the denial of the visa burdens the constitutional rights of a U.S. citizen. *Munoz*, 144 S.Ct. at 1821. This exception is inapplicable here, however, as Omar has no constitutionally protected liberty interest in her spouse being admitted to the country and she makes no other claims supporting such a finding. *Id.*

As outlined by the United States Supreme Court, the consular nonreviewability doctrine applies when a consular official has made a determination and denied a visa application. The logic behind such a doctrine is convincing. Courts do not have the specialized knowledge required to carefully weigh the many concerns present when deciding whether to admit or deny a prospective visa applicant. Such a determination, and the resulting interactions with foreign affairs, has long been held to constitute a core executive function. *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950).

Defendants urge this Court to apply this doctrine to bar consider of Plaintiff's claims. To support this conclusion, they argue that the § 221(g) denial that occurred here is sufficient refusal to preclude judicial review and cite to several cases in which

a district court refused to review a denial. Doc. #11, PageID #109. Defendants cite to *Baaghil v. Miller*, a Sixth Circuit case in which the court invoked the consular nonreviewability doctrine to affirm the dismissal of a challenge to a visa denial. 1 F.4th 427 (6th Cir. 2021).

Plaintiffs respond by arguing that the consular nonreviewability doctrine should not apply here because the visa application has not yet been fully adjudicated. Doc. #13, PageID #182. As Plaintiffs describe it, their case does not seek to have the Court second guess a denial or the reasons behind it, but only seeks to have the Court compel the agency to complete the process. *Id.* at PageID #189. Plaintiffs therefore compare this case to one decided by the Ninth Circuit, *Patel v. Reno*. 134 F.3d 929 (9th Cir. 1997).

The Ninth Circuit in *Patel* rejected a jurisdictional challenge against a complaint for mandamus relief seeking to compel a consular official to adjudicate the plaintiffs' visa applications. 134 F.3d at 931–33. Notably, when one of the plaintiffs inquired into the status of the visa applications pending before the consulate, a consular official wrote that they "refused" to adjudicate the petition until the conclusion of recently opened denaturalization proceedings against the appellants. *Id.* at 931. The Ninth Circuit recognized that, although a consular official's decision to grant or deny a visa is nonreviewable, "when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's

11

discretion, jurisdiction exists." *Id.* at 931–32 (citing *Mulligan v. Schultz*, 848 F.2d 655, 657 (5th Cir. 1988)). The Ninth Circuit concluded that the lawsuit "challeng[ed] the consul's authority to suspend their visa applications, not . . . a decision within the discretion of the consul. Therefore, jurisdiction exists to consider whether the consulate has the authority to suspend the visa applications." *Id.* at 932.

District courts both within and without the Ninth Circuit have applied *Patel's* holding to justify review of a consulate official's failure to decide a pending visa application. *See Jaraba v. Blinken*, 568 F. Supp. 3d 720, 730–31 (W.D. Tex. 2021) (rejecting consular nonreviewability argument for dismissal of a request for mandamus to schedule the plaintiff's visa application interview); *Raduga USA Corp. v. U.S. Dep't of State*, 440 F. Supp. 2d 1140, 1148–49 (S.D. Cal. 2005) (issuing a writ of mandamus for the government to adjudicate the plaintiffs' visa applications); *Alwan v. Risch*, No. 2:18-CV-0073, 2019 WL 1427909, at *4 (S.D. Ohio Mar. 29, 2019) (Marbley, J.) (finding that the defendants' "failure to issu[e] or deny . . . visas without formally rejecting the request" is reviewable under the APA and the Mandamus Act). Specifically, this rationale means that a district court retains jurisdiction to review allegations that the plaintiff's visa application "remains suspended" indefinitely, rather than allegations that the consul merely denied the application. *Nusrat v. Blinken*, No. 21-2801, 2022 WL 4103860, at *5 (D.D.C. Sept.

8, 2022) (rejecting application of the consular nonreviewability doctrine under similar factual allegations).

The Sixth Circuit has not adopted the expansive interpretation of the consular nonreviewability doctrine that Defendants advocate here, but it has recognized that a "district court may take jurisdiction [over a writ of mandamus] to determine if a clear duty is owed to the plaintiff." *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002); *cf. Barrios Garcia v. U.S. Dep't of Homeland Security*, 25 F.4th 430, 450–51 (6th Cir. 2022).

Thus, under the doctrine set forth in *Patel* and followed by many district courts around the country, the Court possesses jurisdiction over Plaintiffs' lawsuit "to compel the consul to make a decision on their visa applications." *Alwan*, 2019 WL 1427909, at *4 (emphasis deleted) (quoting *Raduga*, 440 F. Supp. 2d at 1146). Having established the ability to engage in judicial review of the issue at question, the Court now moves to consider the merits of the claims.

### B.   Review Under Mandamus Act and APA

Section 706(1) of the APA permits courts to "compel agency action unlawfully withheld or unreasonably delayed."[5] 5 U.S.C. § 706(1). In order to make out a claim

---

[5] Where Congress places a specific deadline for agency action, the agency must comply with the timeline. If the agency withholds such action, a reviewing court must compel the action unlawfully withheld. In comparison, where an agency is required to act only within an expeditious, prompt, or reasonable time, 5 U.S.C. § 706 leaves courts with the discretion to decide whether agency delay is

under § 706(1), a party must therefore show (1) that the agency has a discrete agency action that it is required to take and (2) that the action has been unreasonably delayed. *Barrios Garcia*, 25 F.4th at 450.

Relatedly, a district court has authority under the Mandamus Act to "compel an officer or employee of the U.S. or any agency thereof to perform a duty owed to the plaintiff. 28 U.S.C. § 1361. The interplay between these two avenues for relief remains murky at best, but courts have consistently treated a claim under the Mandamus Act as, in essence, a claim for relief under § 706 of the APA. *Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (quoting *Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)). As a result, "courts apply the same principles and standards" to determine relief under either avenue. *Nelson v. United States*, 107 F. App'x 469, 471 (6th Cir. 2004); *Babbitt*, 105 F.3d at 507. Many courts have chosen the APA as the preferred method of analyzing these dual claims under both the Mandamus Act and the APA. *See, e.g., Huron Mountain Club v. U.S. Army Corps of Eng'rs*, 545 F. App'x 390, 393 (6th Cir. 2013); *Gonzalez v. Offutt*, No. 1:23-cv-547, 2024 WL 2847962 at *7 (S.D. Ohio June 5, 2024); *Singh v. Mayorkas*, No. 3:23-cv-527, 2024 WL 420124 at *2 (M.D. Tenn

---

unreasonable. *Barrios Garcia v. U.S. Dep't of Homeland Security*, 25 F.4th 430, 453 n.9 (6th Cir. 2022).

14

Feb. 5, 2024). This Court will follow suit here and analyze Plaintiffs' alleged entitlement to relief under the APA framework.

### 1. Discrete Nondiscretionary Agency Action Requirement

The first element of a claim under the APA consists of an inquiry into whether the agency "failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original). There appear to be three potential theories defining what required action was not taken here: (1) USCIS's duty to adjudicate visa applications to finality pursuant to 8 U.S.C. § 1202(b); (2) mandatory duties relating to either 22 C.F.R. § 42.81(a) (requiring consular offers to issue or refuse immigrant visas) or 22 C.F.R. § 41.106 (requiring consular officers to process visa application forms "properly and promptly"); and (3) the general duty prescribed by the APA to pass upon matters presented to them within a reasonable time. 5 U.S.C. § 555(b). The Court will address each of these theories in turn.

#### a. Statutory Theory

First, Plaintiffs allege that Defendants owe them a nondiscretionary duty under 8 U.S.C. §§ 1202(b) and 1202(d), thereby creating a discrete, legally required action on the part of the agency. Doc. #13, PageID #173. In rebuttal, Defendants point to a recent decision by the D.C. Circuit, in which the court found that nothing in the statutory scheme created a clear duty to take any action beyond placing the visa

15

application in administrative processing. Doc. #16, PageID #217; *Karimova v. Abate*,

No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024).

Some courts have identified 8 U.S.C. § 1202(b) as creating a duty to

adjudicate visa applications to finality. *See* 8 U.S.C. § 1202(b) (stating that "[a]ll

immigrant visa applications shall be reviewed and adjudicated by a consular officer");

*Rai v. Biden*, 567 F. Supp. 3d 180, 195 (D.D.C. 2021) (finding a nondiscretionary

duty in a nearly identical subsection—8 U.S.C. § 1202(d)); *Gomez v. Trump*, 485 F.

Supp. 3d 145, 198 n.23 (D.D.C. 2020) (same); *Anid Infosoft LLC v. Blinken*, No.

1:22-cv-4721, 2023 WL 7312488, at *4 (N.D. Ga. Nov. 3, 2023) (same). Not all

courts agree, however. *See, e.g.*, *Mueller v. Blinken*, 682 F. Supp. 3d 528, 533–37

(E.D. Va. 2023); *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 14–15 (D.D.C. Sept.

27, 2022) (finding that 8 U.S.C. § 1202 only acts to set out what documentation

applicants must provide and to whom it must be provided).

Plaintiff's theory stems from the portion of 8 U.S.C. § 1202(b) which specifies

that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular

officer."[6] 8 U.S.C. § 1202(b). On their face both arguments seem to hold water.

This subsection could be read, as Plaintiffs urge, to create a requirement of the

---

[6] 8 U.S.C. § 1202(d) contains a nearly identical portion but relates to nonimmigrant visa applications: "All nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d).

consular officers who *must* review and adjudicate the applications. However, Defendants' theory, that the subsection only acts to specify *who* is tasked with reviewing and adjudicating the applications also seems plausible. Given these dual plausible interpretations, the Court reserves deciding this open question of statutory interpretation until the other theories have been exhausted.

### b. Code of Federal Regulations Theory

Some courts have found that the Code of Federal Regulations provides the requisite nondiscretionary duty required to grant relief under the APA, either within 22 C.F.R. § 42.81(a) which requires officials to issue or refuse visas, or within 22 C.F.R. § 41.106 which requires officers to process visa applications "properly and promptly." *See, e.g.*, *Am. Acad. Of Religion v. Chertoff*, 463 F. Supp. 2d 400, 421 (S.D.N.Y. 2006); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020). This theory also finds disagreement among some courts. *See, e.g.*, *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 157 (D.D.C. 2022); *Senobarian v. Blinken*, No. 2:23-cv-7208, 2024 WL 897566, at *3 (C.D. Cal. Feb. 29, 2024).

Plaintiffs allege that Defendants owe them a duty to grant or refuse the final visa application under 22 C.F.R. § 42.81(a), thereby creating a discrete, legally required action on the part of the agency. Doc. #1, PageID #6. Undeniably, the applicable regulation creates a mandatory, non-discretionary duty to process a visa application. Where the parties disagree is in their analysis of *what* the completion of

17

that duty must entail. Under Plaintiffs' view, nothing less than a full adjudication and final decision on the application is enough to meet the obligations under the regulation. Doc. #13, PageID #173. Defendants believe, however, that a refusal under INA 221(g) is enough to meet the requirement, and any proceedings or determinations that occur after that point are subject to the discretion of the consular official. Doc. #11, PageID #112–13.

Under the applicable regulations, consular officers are required to "properly and promptly" process applications when they are received. 22 C.F.R. § 41.106. The regulations also provide more specificity in the refusal of immigrant visas:

> (a) Grounds for refusal. When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa.

22 C.F.R. § 42.81(a). A plain reading of § 42.81(a) and § 41.121(a) indicates that the refusal that occurred here, a refusal under INA 221(g), is all that the regulations require. Indeed, this is an interpretation that other courts have adopted as well. *See, e.g.*, *Tesfaye v. Blinken*, 22-411, 2022 WL 4534863 (D.D.C. Sept. 28, 2022); *Yaghoubnezhad v. Stuft*, 1:23-cv-03094, 2024 WL 2077551 (D.D.C. May 9, 2024).

As a result, this Court finds that, while the applicable regulations do create some nondiscretionary duty, that duty is fulfilled by a denial under 221(g). This

theory therefore does not provide Plaintiffs with a currently-unfulfilled duty that the agency has yet to complete.

### c. APA Theory

Third, Plaintiffs point to the APA's mandate that "within a reasonable time, each agency shall proceed to conclude a matter presented to it" to support their position that Defendants owe them a nondiscretionary duty to fully and finally adjudicate the visa application. Doc. #13, PageID #178–79; 5 U.S.C. § 555(b).

Some courts have looked to the statutory terms contained within the APA itself to find a duty that the agency must undertake. Under this theory, courts reason that the visa applications are the discrete matters on which the agency must pass within a reasonable time. *See, e.g.*, *Khazaei v. Blinken*, No. CV 23-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023); *Iqbal v. Blinken*, No. 2:23-cv-1299, 2023 WL 7418353, at *7 (E.D. Cal. Nov. 9, 2023).

Within the Sixth Circuit, courts remain split on this theory. *Compare, e.g.*, *Kobaivanova v. Hansen*, No. 1:11-cv-943, 2011 WL 4401687, at *5 (N.D. Ohio Sept. 16, 2011) (finding that the APA created a nondiscretionary duty); *and Stone v. Blinken*, 2:23-cv-12181, 2024 WL 3556183, at*3 (E.D. Mich. July 26, 2024) (same); *with Xu v. Gonzales*, No. C-3-07-203, 2007 WL 2815449, at *7 (S.D. Ohio Sept. 25, 2007) (finding no nondiscretionary duty under the APA).

19

After undertaking an extensive review of the cases addressing this issue, the Court finds that the APA's general duty for administrative agencies to pass upon a matter presented to them adequately creates a nondiscretionary action requirement. In recognizing this standard, the Court follows the reasoning employed in other cases within this district. *See, e.g.*, *Akhter v. Blinken*, No. 2:23-cv-1374, 2024 WL 1173905, at *4 (S.D. Ohio Mar. 19, 2024) (finding 5 U.S.C. § 555(b) created nondiscretionary duty to adjudicate visa petitions within a reasonable time). In fact, many courts that purported to reject this basis for relief have done so based upon a finding that unreasonable delay did not occur in a particular case, not on a finding that the APA does not permit this type of review. *See, e.g.*, *Kobaivanova v. Hansen*, No. 1:11-cv-943, 2011 WL 4401687, at *6 (N.D. Ohio Sept. 16, 2011) ("Although a claim of unreasonable delay may be based on Sections 555(b) and 706(1), Defendants argue that the facts that would potentially give rise to such jurisdiction are not present in this case.").

Indeed, this Court's line of reasoning must be correct as it would appear to be the only mechanism to ensure that the agency cannot completely abandon their duty. *Safadi v. Howard*, 466 F. Supp. 2d 696, 700 (E.D. Va. 2006); *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) ("[T]he CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely."); *Zalmount v. Gonzalez*, No. 07-12575, 2007 WL 3121532, at

20

*2 (E.D. Mich. Oct. 24, 2007) ("At some point, Defendants' delay in adjudicating an adjustment of status application will suggest that they have abandoned their duty to process the application."); *Xu v. Gonzalez*, No. C-3-07-203, 2007 WL 2815449, at *5 (S.D. Ohio Sept. 25, 2007) (finding that USCIS has discretion over the pace of adjudication, but suggesting that taking no action or refusing to act on an application would be outside the agency's discretion).

To be clear, this finding that a nondiscretionary duty exists is not the end of the analysis. To merit relief under the APA, Plaintiffs must also establish that an unreasonable delay in undertaking the nondiscretionary action has occurred.

### 2. *Unreasonable Delay*

When determining whether an agency was unreasonably delayed action, federal courts consider six factors from *TRAC v. FCC*, 750 F.2d 70 (D.C. Cir. 1984):

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecommunications Rsch. & Action Ctr. ("TRAC") v. Federal Communications Comm'n*, 750 F.2d 70, 80 (D.C. Cir. 1984); *Barrios Garcia*, 25 F.4th at 451–52. Solving this inquiry depends "upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).

Defendants argue that this Court may weigh these fact-dependent factors based solely on the pleadings. Doc. #16, PageID #218–20. District courts are split as to whether an unreasonable delay claim in this context is reviewable on the pleadings, or if it must be considered only after discovery. *Compare Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 18 (D.D.C. 2022) ("Because an analysis of the *TRAC* factors typically requires the court to wade through the particular facts and circumstances of an agency's delay, courts generally conclude that 'undertaking such a fact-bound analysis at [the motion to dismiss] stage is premature.'" (quoting *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 n.6 (D.D.C. 2020))), *and Escalona v. U.S. Dep't of Homeland Sec.*, No 1:20-cv-613, 2021 WL 5546710, at *5–6 (W.D. Mich. Aug. 23, 2021) (same), *with Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 10 n.6 (D.D.C. 2021) ("But it is not uncommon for courts here to resolve unreasonable delay claims in visa adjudication cases on a Rule 12(b)(6)

22

motion." (collecting cases)), *and Preston v. Ky. Consular Ctr.*, No. 6:22-CV-015, 2022 WL 3593052, at *20 (E.D. Ky. Aug. 22, 2022).

The Sixth Circuit has provided little guidance on the matter, but has reversed a ruling sustaining a motion to dismiss where the district court relied on the *TRAC* factors to conclude that USCIS's delay in adjudicating a visa petition was reasonable. *Barrios Garcia*, 25 F.4th at 451–55. In so ruling, the Sixth Circuit favorably cited other circuits' holdings that a "claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Id.* at 451 (quoting *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021)) (citing *Mashpee*, 336 F.3d at 1100). Construing the allegations in the complaint in favor of the plaintiffs, the Sixth Circuit recognized that several *TRAC* factors favored denying the motion to dismiss because "each Plaintiff has ple[d] 'sufficient facts to show that their interests are weighty, implicate health and welfare, and are harmed by' principal petitioners' years-long wait to be placed on the []visa waitlist." *Id.* at 452 (quoting *Gonzalez*, 985 F.3d at 375). The Sixth Circuit noted that discovery would render clear whether the federal government's processing of visa applications was reasonable. *Id.* at 453–54.

This analysis dictates the proper result here. Plaintiffs raise identical allegations under the third and fifth *TRAC* factors; construing their allegations in their favor, they allege a cognizable harm to their marital and familial interests and a

23

significant wait to be reunited. Doc. #13, PageID #198–99. Taking these allegations as true, this is enough to survive dismissal at this stage. *Barrios Garcia*, 25 F.4th at 452; *see Al-Gharawy*, 617 F. Supp. 3d at 18–19.

Defendants' counterarguments are unavailing. First, Defendants contend that the Court may determine, as a matter of law, that the complained-of delay is an insufficient allegation of unreasonable delay. Doc. #16, PageID #219–20. The Sixth Circuit rejected the inverse argument in *Barrios Garcia*, finding "that the mere passage of time alone cannot sustain a claim of unreasonable delay." 25 F.4th at 452. Rather, discovery was warranted to determine the merit of the government's contention that the delay in adjudicating appellants' visa applications was a natural consequence of its "first in, first out" visa-processing scheme. *Id.*

Again, this Court heeds the advice provided by the Sixth Circuit. While it remains possible that the evidence will show that the delay is reasonable, there is little for the Court to rely on at this point to adequately judge whether the passage of time could sustain a claim of unreasonable delay as to the Form I-130. *See, e.g.*, *Escalona*, 2021 WL 5546710, at *6. Only discovery will make that clear. *Id.*; *see Gonzalez*, 985 F.3d at 375.

Second, Defendants infer that affording Plaintiffs relief would place their visa application above all others, pursuant to the fourth *TRAC* factor. Doc. #11, PageID #117. But there is no evidence in the record, at this preliminary stage, to support

24

that inference. *See, e.g.*, *Doe v. Risch*, 398 F. Supp. 3d 647, 658 (N.D. Cal. 2019). Discovery may vindicate Defendants' position, but it is inappropriate to so conclude at the motion to dismiss stage. *Cf. Barrios Garcia*, 25 F.4th at 454 (rejecting similar argument at the motion to dismiss stage).

In support, Defendants cite several cases, including *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021), in which the court found that this factor "heavily" favored the government because "an accumulation of . . . individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *See* Doc. #11, PageID #118. *Tate*, however, is distinguishable from the case here for at least two reasons. First, the procedural posture of this case is different; *Tate* was resolved on a preliminary injunction with the support of several affidavits, factually detailing the government's process in adjudicating petitions at that embassy, whereas the record here is undeveloped on this issue. *See, e.g.*, *id.*; *Al-Gharawy*, 617 F. Supp. 3d at 19 (rejecting identical argument in which the court "lack[ed] evidence" that reorganization would, in fact, move the plaintiffs "to the front of the application queue"). Second, the Sixth Circuit in *Barrios Garcia* disapproved of a similar argument that "agencies are best positioned to manage their resources" and should be given deference under the fourth *TRAC* factor when they so allege on claims of unreasonable delay in visa processing. 25 F.4th at 455 ("Taken to its logical conclusion, the Government's argument would

25

eliminate federal judicial review of any agency action and wipe the APA off the books."). The Court declines to chart a course away from the Sixth Circuit's decision on an analogous issue and finds that discovery is further warranted to assess Defendants' ability to either grant or deny Seif's Form I-130. *See id.* at 454–55.

Accordingly, because the procedural posture of this case and the above-referenced deficiencies in the factual record do not sustain Defendants' argument under the *TRAC* factors, their motion to dismiss is overruled.

## IV.  Conclusion

For the reasons set forth above, the Motion for Dismiss pursuant to Fed. R. Civ. PR. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), Doc. #11, is OVERRULED. A Status Conference will be set by separate entry.

Date: November 15, 2024

_____

WALTER H. RICE
UNITED STATES DISTRICT JUDGE